# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CHAD ALAN HICKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 06-cv-645 |
| | ) | |
| SILAS M. IRVIN, DENNIS ROLKE, | ) | Judge Robert M. Dow, Jr. |
| LAZO SAVICH, JAMES DIAMOND, | ) | |
| and JAMES HENRY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' motion for summary judgment [133], which seeks to nip Plaintiff's prison civil rights lawsuit in the bud. Defendants' motion invokes the Prison Litigation Reform Act's ("PLRA" or the "Act") requirement that inmates exhaust their administrative remedies before filing suit in federal court. Plaintiff's response resorts to the corollary to the Act's exhaustion requirement that an inmate need exhaust only "available" administrative remedies. For the reasons set forth below, Defendants' motion [133] is denied.

**I.     Procedural Background**

Plaintiff, Chad Alan Hicks ("Hicks"), filed this prison civil rights lawsuit on May 2, 2006 [13]. After weathering a motion to dismiss [81, 82], Hicks filed his Third Amended Complaint ("Compl.") [124] in October 2009. The lawsuit, brought pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), arises directly under the United States Constitution. The complaint names as Defendants several officials at the Metropolitan Correctional Center in Chicago ("MCC"). Hicks maintains that he was falsely accused of assaulting a correctional facility officer; that he was placed for six days in a segregated, bug-infested "dry cell" that was

inundated with feces; and that he was retaliated against for filing suit in response to these conditions. In November 2009, Defendants, Silas M. Irvin ("Irvin"), Dennis Rolke ("Rolke"), Lazo Savich ("Savich"), James Diamond ("Diamond"), and James Henry ("Henry"), filed the pending motion for summary judgment. Defendants' summary judgment motion contends that Hicks's suit cannot proceed because Hicks failed to exhaust his administrative remedies, as mandated by 42 U.S.C. § 1997e(a).

**II.   Facts**

On summary judgment, the record evidence is viewed in the light most favorable to the non-moving party—in this instance, Hicks. The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1 statements: Defendant's Statement of Facts ("Def. SOF") [135], Plaintiff's Response to Defendant's Statement of Facts ("Pl. Resp. Def. SOF") [136], Plaintiff's Statement of Additional Facts ("Pl. SOAF") [136], and Defendant's Response to Plaintiff's Statement of Additional Facts ("Pl. Resp. Def. SOAF") [139].[1]

Before delving into the facts, the Court must address at the outset several improper fact-denials by Defendants. Defendants incorrectly denied many of Hicks's L.R. 56.1 fact

---

[1] L.R. 56.1 requires that statements of fact contain allegations of material fact, and that the factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider the statement. See, *e.g.*, *Malec*, 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact. See L.R. 56.1(a), (b)(3)(B); see also *Malec*, 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). In addition, the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)(B) statement of additional facts. See, *e.g.*, *Malec*, 191 F.R.D. at 584 (citing *Midwest Imports*, 71 F.3d at 1317). Similarly, the Court disregards a denial that, although supported by admissible record evidence, does more than negate its opponent's fact statement—that is, it is improper for a party to smuggle new facts into its response to a party's 56.1 statements of fact. See, *e.g.*, *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008).

2

statements, including by citing to briefs rather than record evidence. More importantly, Defendants misperceived their summary judgment burden by incorrectly denying several of Hicks's declaration-supported fact statements, contending that "no independent testimony or documentary evidence" corroborates Hicks's fact statements. Defendants' argument is a non-starter, because Hicks supported his fact statements with citations to a declaration, and declarations, like affidavits, can be used to stave off summary judgment, so long as they represent admissible record evidence. "Provided that the evidence meets the usual requirements for evidence presented on summary judgment * * * a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts." *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003); see also 28 U.S.C. § 1746 (admissibility of unsworn declarations under penalty of perjury). Where Defendants have objected that Plaintiff's fact statements were not corroborated, the Court has deemed the fact statements admitted. See also *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) (noting in a PLRA exhaustion case that the defendants, "though we have warned against this practice repeatedly in our opinions * * * [fell] into the trap of trying to discredit [the plaintiff's] affidavits as 'self-serving'").

Also, the Court will deem admitted Plaintiff's fact statements that are supported with citations to Pl. SOAF Ex. 1, which purports to be a copy of an Inmate Request to Staff form. Defendants maintain that the form should be excluded at summary judgment because there are indications that the form is not authentic. Defendants base their denials on the apparent presence of "shadow text" on the form—that is, faint text in the background of Hicks's writing. Federal Rule of Evidence 901 provides that a document meets the authentication requirement if there is sufficient evidence "to support a finding that the matter in question is what its proponent claims." As applied to Hicks's exhibit, the question is whether there is sufficient evidence to conclude

3

that the proffered exhibit is, in fact, an Inmate Request to Staff form. Federal Rule of Evidence 901 provides guidance to courts about how the determination is to be made: the non-exhaustive illustrations in the rule include testimony by a person with knowledge that a document is what it claims to be (Fed. R. Evid. 901(b)(1)), as well as "distinctive characteristics" of a form that support authenticity when "taken in conjunction with the circumstances." Fed. R. Evid. 901(b)(4). For summary judgment purposes, the Court is satisfied that the document is authentic, based on the declaration-based testimony of Hicks and because the document bears indicia of an authentic BOP form. Moreover, given that Hicks is housed in a federal prison, the surrounding circumstances make it unlikely (one hopes) that Hicks has access to equipment that would allow him to manufacture fake documents. In addition, the form itself indicates that it is a carbon-copy form; that offers an authentication-bolstering explanation for the shadow text. See also Hicks Decl. ¶ 12 (referring to BOP grievance form carbon copies). Based on the evidence before the Court, the exhibit will be admitted for summary judgment purposes; and where the Defendants have denied a fact statement only by pointing to concerns about the authenticity of the document, the fact statement has been deemed admitted.

With those preliminary matters out the way, the Court turns to the facts themselves. Hicks first was housed at the MCC in August 2005. On October 8, 2005, Hicks was accused of assaulting Defendant Rolke. Compl. ¶¶ 17-20. Thereafter, Hicks was placed in the MCC's Special Housing Unit—segregated housing—where he would stay until October 25, 2005. Pl. SOAF ¶ 29. While housed at the Special Housing Unit, Hicks filled out a Bureau of Prisons ("BOP") form, captioned "Inmate Request to Staff"—this is Pl. SOAF, Ex. 1, whose authenticity the Court discussed above. The form was addressed to "Counselor Mr. Owens." On the form, Hicks wrote: "Can you please come down here to segregation to see me I need talk to you

4

please? Also, I have administrative remedy forms to turn in to you" [sic throughout]. When Mr. Owens—subsequently identified as Phillip Owens ("Owens")—came to visit Hicks, the latter submitted "BP-8" and "BP-9" forms regarding the conditions of his confinement. Those forms relate to the grievance process at the warden level. However, Hicks did not receive a receipt, response, or notice of rejection for his grievance. Pl. SOAF ¶ 33; Pl. Resp. Def. SOF ¶ 3. When he never heard back, Hicks also filed a "BP-10" appeals form with the regional director. Again, he received no receipt, response, or notice of rejection. Pl. SOAF ¶ 33.

On May 2, 2006, Hicks filed an amended complaint (Judge Lefkow, to whom the case was assigned initially, granted Hicks *in forma pauperis* status the previous March but dismissed the complaint on initial review under the IFP statute) [6, 12]. After filing the amended complaint, Hicks was placed in the Special Housing Unit; he remained there from May 18 to June 7, 2006. Pl. SOAF ¶ 34. On June 1, 2006, Hicks filed a BP-9 form, complaining that he had been moved to segregated housing without a valid reason. He received no receipt, response, or notice of rejection. Pl. SOAF ¶¶ 35-36.

The BOP maintains a computer database known as "Sentry," in which it logs and tracks grievances filed by inmates. Def. SOF ¶ 4. Once a grievance is entered into the system, the BOP can generate a history of that which is filed—this is called an "Administrative Remedy Generalized Retrieval." Def. SOF ¶¶ 5-6. Defendant's next factual averment is problematic. Supported by a declaration and deposition testimony by BOP attorney-advisor Vincent E. Shaw, Defendant contends that for the 13 grievances[2] that Plaintiff has filed with BOP, he has not exhausted his administrative remedies. Def. SOF ¶ 7; see also Shaw Aff. ¶ 9 ("My thorough review of available records has revealed that Hicks has not exhausted his administrative

---

[2] Plaintiff correctly notes that evidence related to all but the grievances at issue in this case would be knocked out under Rule 404(b) as impermissible propensity evidence.

remedies with respect to the issues presented in this lawsuit"); Shaw Dep. at 122-24. The problem for the Defendants is that exhaustion is a legal question. See *Kaba*, 458 F.3d at 681; *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003)). Shaw's declaration and deposition do not set out the underlying facts upon which Shaw based his conclusion, although the Court's review of Defendants' exhibits indicates that there is no record of Hicks having filed the grievances at issue. Equally important, Defendants have not offered the court a sufficient basis to consider Defendants' (possible) business records at summary judgment.[3] For these reasons, Defendants' fact statements on exhaustion have been disregarded. Defendants have probably not suffered for the evidentiary gap, however. The absence of a business record is evidence that something did not occur (Fed. R. Evid. 803(7))—but, as noted above, Hicks's declaration that he did submit the required forms is evidence, too. The Court is required to look at the evidence in the light most favorable to the non-movant at summary judgment.

## III. Legal Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Factual

---

[3] Normally, a proponent of a business record may admit a document for summary judgment purposes by attaching an affidavit establishing the trustworthiness of the record. The affidavit must be sworn to by a person qualified to introduce the evidence at trial. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). At least in the appropriate case, surrounding circumstances in evidence may be taken into account to establish that the business record exception to the hearsay rule applies. *Id.*; see also *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 776-77 (7th Cir. 2006). Yet, Defendants have not attempted to argue that the surrounding circumstances establish that the business record exception to the hearsay rule applies in this case. In their reply brief, Defendants accuse Hicks's lawyers of reneging on an agreement to stipulate that the Sentry system records would be admitted as business records. Def. Reply at 6 n.7. Defendants, however, have not cited the deposition transcripts that they say support this contention. Admission of these records would not result in summary judgment for Defendants in any event, because Hicks has created a genuine issue of material fact over whether he filed BP-8 and BP-9 forms.

disputes that are irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003) (quotation marks and citations omitted). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**IV.     Analysis**

The Prison Litigation Reform Act of 1995 ("PLRA") provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

7

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense that must be proved by the person asserting it. *Jones v. Bock*, 549 U.S. 199, 211-212 (2007); *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). The exhaustion requirement applies to *Bivens* suits, such as Hicks's, that are brought directly under the United States Constitution. See *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000) (*Bivens* suits and Section 1983 suits are "functional equivalents" for PLRA exhaustion purposes); see also *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (discussing the PLRA's exhaustion requirement in a suit arising under *Bivens*).[4] The Seventh Circuit teaches that, in most cases, exhaustion should be decided before the merits—and that exhaustion is decided by the trial judge. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

The exhaustion requirement serves two main purposes. It protects "administrative agency authority" by giving agencies the opportunity to right their ships before being sued in federal court. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Second, it promotes efficiency, at least in the mine-run of cases, because "[c]laims generally can be resolved much more quickly and economically in an agency than in litigation in federal court." *Woodford*, 548 U.S. at 88-89; *Porter v. Nussle*, 534 U.S. 516, 528 (2002) (explaining that the Court has interpreted the PLRA in light of its "dominant concern to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court").

The Supreme Court held in *Woodford* that the PLRA requires "proper" exhaustion. That means that an inmate must comply with an agency's deadlines "and other critical procedural rules." *Woodford*, 548 U.S. at 90, 93. In other words, the inmate must comply with the

---

[4] Before the Act was amended in 1996, the exhaustion requirement did not apply to *Bivens* suits. Compare Pub. L. No. 104-134, § 803, 110 Stat. 1321, 1321-71 (1996), with 42 U.S.C. § 1997e (1994); see also *Booth v. Churner*, 532 U.S. 731, 739-40 (2001) (discussing the statutory abrogation of the holding in *McCarthy v. Madigan*, 503 U.S. 140, 149 (1992)).

applicable rules on filing, including the form of the document. *Artuz v. Bennet*, 531 U.S. 4, 8 (2000) (discussing proper filings in *habeas* cases); see also *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (citing *Artuz* and applying its teachings to PLRA exhaustion). The reason for the requirement of proper exhaustion is that "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. The Seventh Circuit's opinion in *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002), is instructive. There, the court of appeals rejected a magistrate judge's reasoning "that a prisoner exhausts his state remedies that the state requires, whether or not the prisoner complies with the state's rules for form and timeliness of action." Judge Easterbrook, writing for the panel, rejected that idea because if an inmate could exhaust remedies by "spurning" them, then Congress's statutory scheme could easily be frustrated. *Id.* at 1023-24. "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, *exhaustion has not occurred*." *Id.* at 1023.

The question in this case is whether Hicks has exhausted all of the administrative remedies that were "available" to him. Because the statute does not define the term "available," courts look to its ordinary meaning. *Kaba*, 458 F.3d at 684. The case law provides useful guideposts on fleshing out that meaning: where prison guards prevent access to necessary forms to file a grievance, a plaintiff has exhausted all available remedies. *Id.* (citing *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004)). Likewise, a plaintiff has taken advantage of the available remedies where the inmate satisfies all of the administrative requirements but has his grievance dismissed for a reason as to which the "administrative rulebook is silent." *Dole v. Chandler*, 438 F.3d 804, 809-10 (7th Cir. 2006) (discussing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)); *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (same).

To determine if Hicks exhausted his available administrative remedies, one must start with the regulations governing the administrative remedies available to federal prisoners. Although the parties have pointed to various Department of Justice and MCC documents setting out the administrative regime, citations to the documents lead (eventually) to the codification of the administrative rules at 28 C.F.R. § 542.10 *et seq.*, printed in the "Program Statement" to which inmates have access. See Pl. SOAF, Ex. G, at 7 ("The complete Administrative Remedy process is outlined at length in * * * the Program Statement * * *"); Pl. SOAF, Ex. D (Program Statement that builds off the regulations in the C.F.R.). Here, the Court discusses the regulations themselves, adding matter from the Program Statement only where it adds to the analysis.

Under the regulations, an inmate commences the grievance process by "presenting an issue of concern informally to staff." 28 C.F.R. § 542.13(a). If there is not a satisfactory resolution, the regulations provide, with exceptions not applicable here, that the inmate must complete a form BP-9 within 20 days of the complained-of incident. *Id.* § 542.14(a). The form must be submitted "to the institution staff member designated to receive such Requests (ordinarily a correctional counselor)." *Id.* § 542.14 (c)(4). For those who are unsatisfied with the Warden's response to the BP-9 form, Section 542.15 of the regulations governs appeals. The regulation provides:

> An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. * * * Appeal to the General Counsel is the final administrative appeal.

28 C.F.R. § 542.15(a). Section 542 also governs the form that the appeal generally must take. "Appeals to the Regional Director shall be * * * accompanied by one complete copy or duplicate

original of the institution Request and Response." *Id*. § 542(b)(1). If a Request or an Appeal does not conform to regulatory requirements, it may be bounced back to the inmate: "The Coordinator at any level (CCM, institution, region, Central Office) may reject and return to the inmate without response a Request or an Appeal that * * * does not meet any * * * requirements of this part." *Id*. § 542.17(a). When a submission is rejected, the inmate must be provided with a written notice explaining the reason for the rejection (*id.* § 542.17(b)) and the rejection, too, may be appealed (*id.* § 542.17(c)). At each level of the process, after 40, 50, or 60 days (as applicable), "the inmate may consider the absence of a response to be a denial at that level." *Id*. § 542.18.

Hicks raises two principal arguments in his effort to stave off summary judgment. The first argument is that the lack of Sentry database records "proves nothing." Pl. Mem. at 6. Hicks is correct *at least on the summary judgment record in this case*. Generally, the lack of a business record is evidence that something which ordinarily would have been recorded did not in fact occur. Fed. R. Evid. 803(7). Nonetheless, Hicks is correct that the summary judgment record does not support an inference in favor of Defendants. The record related to the Sentry system includes only the legal conclusion that Hicks failed to exhaust his administrative remedies with respect to the 13 grievances that the BOP has on file. Def. SOF ¶ 7. Although the Court's review of Defendants' exhibits indicates that there is no record of the critical grievances being filed, the Court has explained that Defendants failed to establish the status of the Sentry system records as business records. Therefore, the records will not be considered at summary judgment. In any event, Hicks's declaration says that he did file grievance forms. And the "Inmate Request to Staff" form that Hicks filled out states that Hicks intended to give administrative remedy forms to Counselor Owens, which is precisely what the regulations told Hicks to do. A present

11

intention to engage in (autonomous) future conduct provides circumstantial evidence that the future conduct occurred. See Fed. R. Evid. 803(3); *Mut. Life Ins. Co. v. Hillmon*, 145 U.S. 285, 295-96 (1892) (letters expressing intent of decedent to go to Crooked Creek supported inference that decedent was at Crooked Creek). Moreover, Hicks has offered evidence, which BOP does not contest, that "[t]he BOP's filing system is not immune from human error." Def. Resp. Pl. SOAF ¶ 27. Thus, the only record evidence properly before the Court indicates that Hicks filed grievances, but received no responses, rejections, or receipts.

The lack of receipts is important for Hicks's next argument, which relates to the "end-run" procedure in 28 C.F.R. § 542.18, whereby an inmate can consider the absence of a response to be a denial. Hicks contends that under the wording of the regulation, he had no way of knowing when he could file his appeal. Under the regulation, a grievance "is considered filed on the date it is logged" into the Sentry system. 28 C.F.R. § 542.18. The MCC's Program Statement governing grievances says that the inmate must be given a receipt that is generated by the Sentry system. Pl. SOAF, Ex. D, at 3. The regulations further provide that if the inmate does not receive a response within 40, 50, or 60 days (depending on grievance stage) of filing, then he "may consider the absence of a response to be a denial at that level."[5]

On these facts, which (again) must be construed in the light most favorable to Hicks, the Court agrees that there was no way for Hicks to know when he could file an appeal. The receipt-generating filing is what starts the clock ticking under Section 542.18. And the Supreme Court held in *Woodford* that the PLRA requires "proper" exhaustion, which means that an inmate must comply with an agency's timing deadlines. *Woodford*, 548 U.S. at 90, 93; see also *Dole*, 438 F.3d at 810 (noting that if an inmate had "filed an untimely claim, he might have ultimately

---

[5] The parties fight over the significance of the word "may" in the regulations, but 42 U.S.C. § 1997e(a) by its terms provides that if an inmate may do something to exhaust his remedies, he must do it.

prejudiced his case"). These facts bring the case within the teachings of *Brengettcy v. Horton*, 423 F.3d 674 (7th Cir. 2005). In *Brengettcy*, the Seventh Circuit reiterated its earlier holding that "refuse[d] to interpret the PLRA so narrowly as to * * * permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances." *Id.* at 682 (quoting *Lewis v. Washington*, 300 F.3d 829, 835 (7th Cir. 2002)). The court concluded that the district judge to whom the case initially was assigned correctly held that the defendant was not entitled to summary judgment, where the plaintiff had filed grievances and heard nothing back from prison officials:

> Judge Bucklo concluded that Brengettcy "ha[d] done all that is reasonable to exhaust his administrative remedies" because the prison officials failed to respond to his grievance. She knew that Brengettcy had alleged that he filed a grievance as early as August 23, 2000, in compliance with CCDOC's internal timetables. Her ruling was reasonable given the CCDOC's grievance policy, which requires a decision to be made on a prisoner's grievance within 30 days of filing; if no decision is possible within that time period, the prisoner is entitled to a notice that his grievance will require more than 30 days for resolution. Once a decision has been made, the policy allows "five (5) working days from receipt of the decision, to appeal to the Administrator of Program Services or designee." *But the policy does not instruct a prisoner on what he is to do when the CCDOC fails to respond to his grievance and there is no decision to appeal.* Particularly in the light of Brengettcy's allegations that he filed a grievance within the time period mandated by CCDOC's rules, we conclude that Horton was not entitled to judgment on the basis of any alleged failure to exhaust.

*Id.* (emphasis added).

The *Brengettcy* case is squarely on point. Hicks alleges that he timely filed complaints and heard nothing back. Because he never received a receipt and there is no evidence that his complaint was filed within the BOP's system, then he could never have timely filed a BP-10 appeals form with the regional director: because the filing within BOP's system (over which BOP has control) starts the Section 542.18-clock, the 40 to 60 days for using the end-run procedure could *never* be reached where the grievance was never entered into the BOP system.

In short, under the regulations that the BOP wrote, an inmate never gains the right to appeal from a grievance that never gets filed, whether misplaced or ignored. See *Brengettcy*, 423 F.3d at 682; see also *Dole*, 438 F.3d at 809-10 (stating that "a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance * * *" and noting that control over grievance processing was within the exclusive control of prison officials); *Pozo*, 286 F.3d at 1025 ("To exhaust administrative remedies, a person must follow the rules governing filling and prosecution of a claim."); *Devbrow v. Carroll*, 2009 WL 2750004, at *2 (S.D. Ind. Aug. 26, 2009) (inmate had exhausted available remedies where essential ingredient in initiating an appeal, the "Log ID number" from the original grievance, was missing because the inmate never received the required information). And, as in *Dole*, Defendants have pointed to nothing else that Hicks could have done. Unlike *Dole*, however, it is not the case that "the regulations were not *clear* about how to proceed once a timely grievance was lost" (438 F.3d at 811 (emphasis added))—here, the regulations simply left nothing else to do. Perhaps these circumstances point to a glitch in the BOP's grievance procedure; if that is the case, it lies within the BOP's power to make a repair. See *Ill. Bell Tel. Co. v. WorldCom Techs., Inc.*, 179 F.3d 566, 574 (7th Cir. 1999).

In sum, although the Seventh Circuit takes a strict compliance approach to exhaustion, Hicks has satisfied the requirements by filing "complaints and appeals in the place, and at the time, the prison's administrative rules" require. *Pozo*, 286 F.3d at 1025. The only record evidence indicates that Hicks used all of the regulatory hooks that were available to him. Therefore, Defendants are not entitled to summary judgment.

## VI. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [133] is denied.

Dated: July 8, 2010

_____
Robert M. Dow, Jr.
United States District Judge