UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHAD ALAN HICKS, #30016-424, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 06 C 645 |
| v. ) | |
| ) | Judge Robert M. Dow Jr. |
| SILAS IRVIN, DENNIS ROLKE, ) | |
| LAZO SAVICH, JAMES DIAMOND, ) | |
| and JAMES HENRY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
<u>PARTIAL MOTION FOR SUMMARY JUDGMENT</u>**

**I.    INTRODUCTION**

Prison officials cannot ignore inmates' fundamental human needs, including water and sanitary conditions of confinement. Defendants' failure to respond to Plaintiff Hicks' repeated complaints about the conditions in his cell denied Hicks basic human necessities that are his right under the Due Process Clause of the Fifth Amendment. After Hicks was falsely accused of attacking a guard, he was placed in Special Housing Unit cell 1104. Hicks had no access to water for drinking or washing during the six days he was in this cell. He received minimal amounts of water with his meals each day. His toilet did not flush and backed up when inmates in adjacent cells flushed their toilets. For 23 hours each day, Hicks was forced to live in close proximity to feces that had accumulated in the toilet. Bugs infested his cell. Simply put, the conditions in the cell during the six days Hicks was housed there completely defy basic notions of human dignity.

Hicks complained about these unconstitutional conditions to the Defendants. He spoke with each Defendant about these deplorable conditions while they made rounds through the

SHU. The Defendants cannot deny that Hicks made these complaints. Yet, despite knowing that Hicks had no access to water and was living feet from a broken, feces-filled toilet, Defendants did nothing. As such, Defendants violated Hicks' rights under the Fifth Amendment Due Process Clause. The Court should grant summary judgment in Hicks' favor on Count I.

## II. STATEMENT OF UNDISPUTED FACTS

On October 8, 2005, after an incident between Correctional Officer Rolke and Hicks, Hicks was assigned to cell 1104 in the Special Housing Unit ("SHU") of the MCC (the "MCC") in Chicago. (Hicks SF ¶¶ 10-12.)[1] Hicks remained in SHU cell 1104 (the "Cell") from October 8 through October 14, 2005. (*Id*. ¶ 11.)

### A. Cell Conditions: No Water, Broken Toilet, and Bugs

While Hicks was in the Cell, the faucet was broken. (*Id.* ¶ 13.) Hicks had no access to water in the Cell for drinking or cleaning because the faucet is the only source of water for an inmate within a SHU cell. (*Id.* ¶¶ 13, 15.) Three times a day with each meal, Hicks received a 4-6 oz. glass of water. (*Id.* ¶ 14.) No other water was provided to Hicks. (*Id.*)

The toilet in the Cell was also broken. (*Id.* ¶ 17.) When inmates in cells adjacent to Hicks flushed their toilets, it caused the toilet in the Cell to back up. (*Id.*) Defendants never provided Hicks with a bucket to use for going to the bathroom, so he was forced to use the clogged toilet. (*Id.* ¶ 19.) Because Hicks was not able to properly flush the toilet, feces accumulated in his toilet during the six days he was in the Cell. (*Id.* ¶ 20.) Hicks spent 23 hours a day in the Cell, in close proximity to the feces-filled toilet. (*Id.* ¶ 21.) On October 14, 2005, the day Hicks was moved from SHU cell 1104 into another cell, a member of the MCC facilities department came "to check on the plumbing." (*Id.* ¶ 46.)

---

[1] References to Hicks' Rule 56.1 Statements are cited as "Hicks SF ¶ _."

In addition, Hicks noticed bugs in the Cell multiple times each day. (*Id.* ¶ 23.) Some bugs flew out of the drain, while others crawled along the floor of the Cell. (*Id.* ¶ 24.)

Defendants admit that a lack of water, a broken toilet, and bugs in an inmate's cell are serious problems that require immediate attention. (*Id.* ¶¶ 16, 22, 25.)

B.  **Hicks' Complaints to Defendants**

While housed in the Cell, Hicks verbally complained to Irvin, Henry, Savich, and Diamond about the lack of water, broken toilet, and bugs while each Defendant made rounds through the SHU.[2] (*Id.* ¶¶ 37, 39, 41, 43.) Despite his complaints, Hicks lacked a functioning toilet or sink throughout his stay in the Cell. (*Id.* ¶¶ 13, 18.)

1.  **Warden Silas Irvin**

On at least October 13, 2005, Irvin made rounds through the SHU. (*Id.* ¶ 28.) As warden, one of Irvin's responsibilities was to do rounds through the SHU to make sure everything was running smoothly and to talk to inmates about any problems. (*Id.* ¶ 29.) Irvin does not deny that Hicks complained to him about the lack of water, broken toilet, and bugs in his cell. (*Id.* ¶ 38.)

2.  **Associate Warden James Henry**

Henry made rounds through the SHU on at least October 13 and 14, 2005. (*Id.* ¶ 35.) While making the rounds, Henry would "go cell to cell to cell to cell [and] acknowledge the inmates." (*Id.* ¶ 36.) Henry would "try to talk to the inmates" while doing rounds through the SHU. (*Id.*) Henry has no recollection whether Hicks complained to him about the lack of water, broken toilet, and bugs in his cell; he does not deny that Hicks ever talked to him about these conditions. (*Id.* ¶ 40.)

---

[2]  At this time, Hicks does not move for summary judgment on Count I against Defendant Rolke.

### 3. Captain Lazo Savich

On October 12 and 14, 2005, Savich signed into the SHU log book, indicating that he was making rounds through the SHU. (*Id.* ¶ 30.) During rounds, Savich would stop by each cell and, if the inmate requested, he would talk with the inmate. (*Id.* ¶ 31.) Savich did not sign into the SHU log book every time he went on rounds. (*Id.* ¶ 32.) But he usually visited the SHU "at least two, three, four times a week." (*Id.*) Savich cannot deny that Hicks ever complained to him about the broken toilet and lack of water in his cell. (*Id.* ¶ 42.)

### 4. Lieutenant James Diamond

Diamond made rounds through the SHU on at least October 11, 12, 13, and 14, 2005. (*Id.* ¶ 33.) Normally Diamond would walk through the SHU on average between "five and ten" times every work day. (*Id.* ¶ 34.) While Diamond does not remember the broken toilet and lack of water, he does not deny that Hicks in fact had no water in his cell during the six days he was in the SHU. (*Id.* ¶ 45.)

## III. STANDARD OF REVIEW

Summary judgment is appropriate and the moving party is entitled to judgment as a matter of law if there are no genuine issues of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must consider the entire record when making a summary judgment determination. *Powers v. Dole,* 782 F.2d 689, 694 (7th Cir. 1986). Indeed, the burden on the moving party "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

The court must view the evidence in the light most favorable to the non-moving party, but the non-moving party is required to "go beyond the pleadings" and "designate specific facts

showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324. Likewise, the non-moving party loses the benefit of the doubt if the record does not contain competent evidence on both sides of a factual question. *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 367 (7th Cir. 1997).

## IV. ARGUMENT

Hicks was forced to spend six days—23 hours per day—in a segregation cell lacking water for drinking or washing, (Hicks SF ¶¶ 13, 15), with a broken toilet accumulating feces, (*id.* ¶¶ 17-21), and a bug infestation, (*id.* ¶¶ 23, 24). As a pretrial detainee during these deprivations, Hicks brings his conditions of confinement claim under the Due Process Clause of the Fifth Amendment. The Seventh Circuit has held that pretrial detainees are "entitled to at least the same protection against deliberate indifference to [their] basic needs as is available to convicted prisoners under the Eighth Amendment." *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003) (citing *Bell v. Wolfish¸* 441 U.S. 520, 535 n.16 (1979)). *See also Washington v. LaPorte County Sheriff's Dept.*, 306 F.3d 515, 517 (7th Cir. 2002) ("The protections for pre-trial detainees are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'") (quoting in part *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). As such, the Eighth Amendment provides the proper legal framework for Hicks' claim.

Under the Eighth Amendment, "the plaintiff has the burden of showing that (1) the harm to the plaintiff was objectively serious; and (2) that the official was deliberately indifferent to her health or safety." *Cavalieri*, 321 F.3d at 620 (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). When reviewing conditions of confinement, courts "consider the totality of the conditions of confinement to determine whether a prisoner has been deprived of basic human needs." *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989).

### A. Hicks' Cell Conditions Constituted Sufficiently Serious Deprivations of Minimal Life Necessities

The Eighth Amendment requires that the conditions at issue be "'sufficiently serious' so that 'a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities.'" *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting in part *Farmer*, 511 U.S. at 834). The undisputed facts show that Hicks spent six days, 23 hours per day, in a segregation cell lacking water for drinking or washing, with a broken toilet accumulating feces, and a bug infestation problem. These conditions deprived Hicks of the minimal civilized measure of life's necessities and therefore entitle him to judgment as a matter of law.

#### 1. Keeping Hicks in a Cell Lacking Water for Drinking or Washing Denied Him Minimal Civilized Necessities

Access to water for drinking or washing is a basic human necessity. *See Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) (a prison must provide "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing)"). Not surprisingly, the lack of water in a cell, even for a couple of days, constitutes a sufficiently serious deprivation that violates the Eighth Amendment, and, therefore, the Fifth Amendment's Due Process Clause. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (unfit drinking water, along with filthy state of cell and broken plumbing, was unconstitutional); *Pelker*, 891 F.2d at 139 (placing a prisoner in a feces-smeared cell for three days without running water, while ignoring his requests for water and cleaning supplies, violates the Eighth Amendment); *Kimbrough v. O'Neil*, 523 F.2d 1057, 1059 (7th Cir. 1975) (conditions including lack of toilet, lack of water for drinking or washing, and lack of mattress, bedding, or blankets, "even for a period of three days, could constitute a violation of the Eighth Amendment").

Hicks' confinement for six days in a cell lacking water for drinking or washing denied him minimal civilized necessities, in violation of the Eighth Amendment. According to Defendant Irvin, the then-warden of the MCC, the sink faucet is an "inmate's only source of water" in an SHU cell. (Hicks SF ¶ 15.) Hicks has shown that the faucet in his cell was broken. (*Id.* ¶ 13.) Without access to a working sink in the Cell, Hicks only received a 4-6 oz. glass of water three times a day. (*Id.* ¶ 14.)

Defendants admit that a lack of water in the cell is a "major" problem that no inmate should have to endure. (*Id.* ¶ 16.) Defendant Irvin admitted that no inmate should remain in a cell lacking access to water. (*Id.*) Defendant Diamond admitted that a broken sink or lack of access to water is a "major" problem. (*Id.*) Similarly, Defendant Henry stated that it would not be okay to have a cell without running water. (*Id.*) Likewise, Defendant Savich stated that "Absolutely," lack of water should be remedied in a cell, "within an hour or so." (*Id.*)

Lacking access to running water is a "sufficiently serious" condition, and the undisputed facts show that Hicks lacked access to running water for drinking or washing for the six days that he was housed in the Cell. The deprivation of this basic necessity entitles Hicks to judgment as a matter of law.

### 2. Keeping Hicks' In A Cell With A Broken Toilet And Exposing Hicks To Human Waste Denied Him Minimal Civilized Necessities

In addition to the lack of water, Hicks was forced to live within feet of a clogged toilet filled with feces for six days. (*Id.* ¶¶ 17, 20, 21.) By any measure, this constitutes a deprivation of Hicks' basic human need of living in sanitary conditions.

Indeed, courts have repeatedly held that working plumbing is a basic necessity. *See Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) ("A lack of heat, clothing, or sanitation can violate the Eighth Amendment."); *Ramos*, 639 F.2d at 568 (a prison must provide "reasonably

adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing)"); *Kimbrough*, 523 F.2d at 1059 (lack of toilet, lack of water for drinking or washing, and lack of mattress, bedding, or blankets, "even for a period of three days, could constitute a violation of the Eighth Amendment").

As a result, when plumbing breaks down and an inmate is exposed to human feces, courts have found an Eighth Amendment violation. *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (placement in segregation cell with the floor covered in water, non-functioning sink and toilet, walls smeared with blood and feces, and lacking a mattress would violate the Eighth Amendment); *Burnette v. Bureau of Prisons*, 277 Fed. App'x. 329, 331 (5th Cir. 2007) (inmate alleging he was forced to share a trash bag as a toilet with mentally unstable inmate stated a prima facie claim); *Duckworth¸* 955 F.2d at 22 ("[F]ilth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, poor lighting, inadequate heating, unfit water to drink, dirty and unclean bedding, without toilet paper, rusted out toilets, broken windows, [and] ... drinking water contain[ing] small black worms which would eventually turn into small black flies" would violate the Eighth Amendment).

The six days Hicks spent in close proximity to feces in his toilet establish a constitutional violation because exposure to human waste is so offensive that even a short period of exposure violates the Eighth Amendment. *See DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (exposure to human waste for even 36 hours would constitute a sufficiently serious deprivation in violation of the Eighth Amendment because it "evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment"); *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (three days in feces-covered cell would be a sufficiently serious condition of confinement because courts are "especially cautious about

condoning conditions" that include an inmate's proximity to feces); *Pelker*, 891 F.2d at 139 (7th Cir. 1989) (placing a prisoner in a feces-smeared cell for three days without running water, while ignoring his requests for water and cleaning supplies, would violate the Eighth Amendment).

Hicks was exposed to human waste due to the broken toilet for nearly every hour of the day, for six days. This constitutes a sufficiently serious deprivation of basic necessities, heightened by the fact that Hicks lacked access to running water for washing or cleaning. Defendants admit that no inmate should be in a cell with a broken toilet, and if the toilet is broken, it should be repaired immediately. (Hicks SF ¶ 22.) Defendant Irvin admitted that no inmate should remain in a cell with a broken toilet and that if the toilet was not fixed, an inmate should be moved to a working cell. (*Id*.) Defendant Henry admitted that a backed-up toilet and feces backing up into a cell should prompt a repair. (*Id*.) Defendant Savich admitted that if a toilet is broken, it should be fixed or the inmate removed to another cell. (*Id*.) And Defendant Diamond stated that he would first remove the inmate from a cell with a broken toilet and then seek to get it fixed. (*Id*.) Despite Defendants' statements, only on the day that Hicks was moved out of the Cell did an MCC facilities employee come to check on the plumbing. (*Id.* ¶ 46.)

### 3. Keeping Hicks In A Cell Crawling With Bugs Denied Him Minimal Civilized Necessities

Being housed in a cell crawling with bugs nearly every hour of the day for six days is a sufficiently serious deprivation of basic necessities. Hicks noticed bugs in the Cell multiple times a day. (Hicks SF ¶ 23.) Some of the bugs flew out of the drain in the Cell, while other types of bugs crawled along the floor of the Cell. (*Id*. ¶ 24.) A bug infestation problem is a sufficiently serious condition in violation of the Eighth Amendment.

Defendants admit that the presence of bugs in an inmate's cell is a serious problem that MCC officials must address right away. (*Id*. ¶ 25.) Defendants Irvin and Henry admitted that a

bug infestation is a problem that should be repaired. (*Id.*)  Also, Defendant Savich admitted that no inmate should remain in a cell with bugs. (*Id.*)  And Defendant Diamond specifically stated that "[b]ugs in the cell would be major." (*Id.*)

Courts agree that bug infestations can be sufficiently serious conditions that violate the Eighth Amendment. *See Duckworth*, 955 F.2d at 22 ("[F]ilth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, poor lighting, inadequate heating, unfit water to drink, dirty and unclean bedding, without toilet paper, rusted out toilets, broken windows, [and] ... drinking water contain[ing] small black worms which would eventually turn into small black flies" would violate the Eighth Amendment); *Pritchett v. Page*, 2000 WL 1129891, at *9 (N.D. Ill. Aug. 9, 2000) (insect infestations can be actionable); *Ruff v. Godinez*, 1993 WL 239045, at *4 (N.D. Ill. June 28, 1993) (inadequate plumbing, coupled with insect infestation, rose to the level of Eighth Amendment violation).

Hicks has demonstrated that he spent six days in the Cell, where he lacked water for drinking or washing, was exposed to a broken toilet accumulating other inmates' feces, and experienced a bug infestation problem.  Courts have held that similar conditions are all "sufficiently serious."  Defendants themselves have admitted that a lack of water, a broken toilet, and a bug infestation are all serious conditions. Therefore, Hicks has shown that the conditions present in the Cell were "sufficiently serious" and that he was deprived of the minimal civilized measure of life's necessities.

**B.     Defendants Acted With Deliberate Indifference to Hicks' Cell Conditions**

Hicks has demonstrated that "prison officials acted with 'deliberate indifference' to the conditions in question." *Townsend*, 522 F.3d at 773 (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)).  The Seventh Circuit defines "deliberate indifference" to mean "that the official knew

that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id*. (citing *Farmer*, 511 U.S. at 847). Specifically, "it is not enough for the inmate to show that the official acted negligently or that he or she should have known about the risk." *Id*. (citing *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004)). Rather, "the inmate must show that the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference." *Id*. (citing *Pierson*, 391 F.3d at 902).

### 1. It Is Undisputed That Hicks Verbally Complained To Defendants Irvin, Henry, Savich, And Diamond About His Cell Conditions

It is undisputed that Hicks verbally complained to Defendants Irvin, Henry, Savich, and Diamond about his cell conditions. Hicks verbally complained to Defendant Irvin about the bugs, clogged toilet, and lack of water in his SHU cell when Irvin was making rounds through the SHU. (Hicks SF ¶ 37.) Defendant Irvin cannot deny that Hicks complained to him about the lack of water, bugs, and broken toilet in his cell. (*Id*. ¶ 38.) Irvin does not deny that Hicks in fact lacked water in the Cell during the six days that Hicks was in the Cell. (*Id*. ¶ 45.)

Hicks verbally complained to Defendant Henry about the bugs, clogged toilet, and lack of water in his SHU cell while Henry was making rounds through the SHU. (*Id*. ¶ 39.) Defendant Henry does not deny that Hicks complained to him about the lack of water, bugs, and broken toilet in the Cell, although Defendant Henry has no recollection one way or the other whether Hicks voiced any complaints about his cell conditions. (*Id*. ¶ 40.) Henry cannot deny that Hicks in fact lacked running water the entire time he was in the Cell. (*Id*. ¶ 45.)

Likewise, Hicks verbally complained to Defendant Savich about the bugs, clogged toilet, and lack of water in the Cell while Savich was making rounds through the SHU. (*Id*. ¶ 41.)

Savich cannot deny that Hicks complained to him about the broken toilet and lack of water in the Cell. (*Id*. ¶ 42.)

It is undisputed that Hicks verbally complained to Defendant Diamond about the bugs, clogged toilet, and lack of water in the Cell while Diamond was making rounds through the SHU. (*Id*. ¶ 43.) Although Diamond has no "knowledge or recollection" about Hicks's defective toilet or lack of water while he was in the Cell, (*id*. ¶ 44), Diamond cannot deny that Hicks lacked running water for the duration of his time in the Cell. (*Id*. ¶ 45.) Furthermore, despite Hicks' complaints about his clogged toilet and lack of water, it was only on the day he was removed from the Cell that a worker came "to check on plumbing" for cell 1104. (*Id.* ¶ 46.)

### 2. Defendants Made Rounds Of The SHU, Speaking To Inmates And Viewing Cell Conditions

"Deliberate indifference can be established by inference from circumstantial evidence." *Vinning-El*, 482 F.3d at 924. First, it is undisputed that Defendants Irvin, Henry, Savich, and Diamond made rounds of the SHU during the time Hicks was in the Cell. Defendant Irvin made rounds through the SHU on October 13, 2005. (Hicks SF ¶ 28.) Defendant Henry made rounds through the SHU on October 13 and 14, 2005. (*Id*. ¶ 35.) Defendant Savich made rounds through the SHU on October 12 and 14, 2005, (*id*. ¶ 30), and typically visited the SHU "at least two, three, four times a week." (*Id*. ¶ 32.) And Defendant Diamond made rounds through the SHU on October 11, 12, 13, and 14, 2005, (*id.* ¶ 33), walking through the SHU on average between "five and ten" times every day that he worked. (*Id*. ¶ 34.)

On these rounds, the Defendants made a point to talk with inmates. One of Irvin's job responsibilities as warden was to do rounds through the SHU to make sure everything was running smoothly and to talk to inmates about any problems. (*Id.* ¶ 29.) Similarly, when Defendant Henry made rounds, he would "go cell to cell to cell to cell, acknowledge the

inmates," and, as Henry testified: "I try to talk to the inmates when I'm in the SHU making rounds." (*Id*. ¶ 36.) Likewise, when Defendant Savich made rounds, he would stop by each cell and, if the inmate requested, he would talk to the inmate. (*Id*. ¶ 31.) During these rounds, the Defendants would walk past SHU Cells and look inside, thus noticing SHU cell conditions.

Hicks has shown that Defendants acted with "deliberate indifference" to the conditions of the Cell. It is undisputed that Hicks verbally complained to Defendants Irvin, Henry, Savich, and Diamond and that these Defendants made regular rounds of the SHU, talking with inmates and observing cells. Despite the sufficiently serious conditions of the Cell and Hicks' verbal complaints to Defendants, the Defendants failed to address the conditions of the Cell for the six days Hicks was housed in the Cell. (*Id*. ¶¶ 13, 18.) Hicks has demonstrated that Defendants knew that he "faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend*, 522 F.3d at 773.

### 3. Defendants Offer No Affirmative Evidence That Hicks Did Not Complain To Them About His Cell Conditions

Defendants offer no affirmative evidence that Hicks did not complain to them about the conditions present in the Cell. A party opposing summary judgment must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In their depositions, the Defendants stated that they did not remember speaking with Hicks and admitted that they "cannot deny" that Hicks complained to them. Defendant Irvin "cannot deny" that Hicks complained to him about the lack of water, bugs, and broken toilet in the Cell, (Hicks SF ¶ 38), or that Hicks in fact lacked water in the Cell (for the duration of his time in the Cell). (*Id*. ¶ 45.) Like Irvin, Defendant Henry "cannot deny" that Hicks complained to him about the lack of water, bugs, and broken toilet in the Cell, (*id.* ¶ 40), or that Hicks in fact lacked water in the Cell (during the six days that he was

in the Cell). (*Id*. ¶ 45.) Savich also cannot deny that Hicks complained to him about the broken toilet and lack of water in the Cell. (*Id*. ¶ 42.) And although Diamond has no "knowledge or recollection" about Hicks's defective toilet or lack of water while he was in the Cell, (*id*. ¶ 44), he specifically "cannot deny" that Hicks lacked water in the Cell for the duration of his time in the Cell. (*Id*. ¶ 45.)

Based on the testimony provided at their depositions, Defendants cannot deny that Hicks complained to them about the conditions of the Cell. Defendants' deposition testimony does not rebut Hicks' testimony that he complained to them about the health risks posed by the Cell.

Hicks has presented evidence that he spent 23 hours per day for six days in the Cell. During that time, Hicks lacked water for drinking or cleaning, was exposed to a broken toilet accumulating his own and other inmates' feces, and experienced a bug infestation problem. Despite the unconstitutional conditions of the Cell and the complaints Hicks verbally presented to the Defendants, the Defendants failed to address the conditions of the Cell. The Defendants have admitted that they "cannot deny" that Hicks verbally complained to them about the Cell's conditions or that he in fact suffered from sufficiently serious cell conditions. Therefore, Hicks has demonstrated that Defendants knew that Hicks "faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend*, 522 F.3d at 773.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests summary judgment on Count I of his Third Amended Complaint against Defendants Irvin, Henry, Savich, and Diamond.

Dated: February 22, 2012                    Respectfully,

CHAD ALAN HICKS

By:  /s/Timothy J. McCaffrey
       One of his attorneys

Timothy J. McCaffrey (tmccaffrey@pircher.com)
Emily A. Fox (efox@pircher.com)
Pircher, Nichols & Meeks
900 North Michigan Avenue, Ste. 1050
Chicago, Illinois 60611
Tel. (312) 915-3112

Thomas G. Weber (tgweber@winston.com)
Mary T. McCarthy (mmccarthy@winston.com)
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel. (312) 558-5600

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2012, I caused a copy of **Memorandum of Law in Support of Plaintiff's Partial Motion for Summary Judgment** to be served on counsel of record by ECF electronic filing:

    Eric S. Pruitt (eric.pruitt@usdoj.gov)
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    Tel. (312) 353-5496

                                        /s/Timothy J. McCaffrey